UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARREN HURD,

    *Plaintiff*,

v.                                   CASE NO. 10-CV-14925

COMMISSIONER OF                DISTRICT JUDGE ARTHUR J. TARNOW
SOCIAL SECURITY,                 MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a supplemental security income (SSI)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits. (Doc. 3.) This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 16.)

Plaintiff was 49 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9, at 16.) Plaintiff's employment history includes work as line operator as a temporary employee for brief periods, and as driver for three months. (Tr. at 86.) Plaintiff filed the instant claim on April 27, 2007, alleging that he became unable to work on January 17, 2006. (Tr. at 76.) The claim was denied at the initial and administrative stages. (Tr. at 36.) In denying Plaintiff's claim, the Commissioner considered "Late Eff of Musculoskl & Connective Tissue Injuries" as a possible basis of disability. (*Id.*) Plaintiff requested a hearing before an administrative law judge ("ALJ") on July 16, 2007. (Tr. at 42-43.)

On July 15, 2009, Plaintiff appeared before ALJ Henry Perez, Jr., who considered the application for benefits *de novo*. (Tr. at 9-19.) In a decision dated August 21, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 19.) Plaintiff requested a review of this decision on October 6, 2009. (Tr. at 6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 19, 2010, when, after the review of additional exhibits[2] (Tr. at 7-9), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On December 11, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.    Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the

claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of April 27, 2007. (Tr. at 15.) At step two, the ALJ found that Plaintiff's broken right ankle and metal plate in his left leg from ankle to shin were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of

impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. at 17.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 15-17.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 19.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff fractured his right distal tibia when he fell from a ladder on January 19, 2007. (Tr. at 128.) As a result, Plaintiff underwent surgery for the fracture wherein fixation hardware was implanted, i.e., "two screws in place above the tibial plafond" and a "fixation plate." (Tr. at 122, 143-44, 151.) Plaintiff was discharged on January 29, 2007. (Tr. at 144.) As of February 8, 2007, "everything look[ed] good." (Tr. at 149.)

On April 12, 2007, an x-ray of the right tibia and fibula showed "[h]ealing fracture of the distal tibia with intact internal fixation hardware." (Tr. at 119, 135.)

A physical residual functional assessment completed on June 4, 2007, concluded that Plaintiff was able to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour day, sit for about 6 hours in an 8-hour day and was unlimited in his ability to push or pull. (Tr. at 171.) The assessment also concluded that Plaintiff was not able to use ladders, ropes or scaffolds and was frequently limited in other postural areas. (Tr. at 172.) There were no manipulative, visual, communicative, or environmental limitations established. (Tr. at 173-74.)  There was no treating source statement regarding Plaintiff's physical capabilities on file at the time of the assessment. (Tr. at 176.)

On August 23, 2007, Allan Birk, D.O., completed a physical capacities assessment wherein he concluded that Plaintiff could frequently (continuously up to 8 hours with breaks) sit,

7

sometimes (continuously up to 2 hours or occasionally up to 6 hours) stand and walk, and could sometimes lift up to 10 pounds, bend, squat, crawl, kneel, reach over shoulder, grasp, push, pull, climb, and climb stairs. (Tr. at 193.)

On May 26, 2009, Dr. Birk completed a Medical Source Statement wherein he opined that Plaintiff could never lift or carry any weight, not even up to 10 pounds. (Tr. at 178.) Dr. Birk found that Plaintiff could not sit for more than 15 minutes at a time without interruption and could not sit for more than 15 minutes in an 8-hour day. (Tr. at 179.) Dr. Birk also indicated that Plaintiff's use of a cane was medically necessary. (*Id.*) Dr. Birk found that Plaintiff could never use his right or left hand and he made no choice as to which hand was dominant for Plaintiff. (Tr. at 180.) Dr. Birk also found that Plaintiff could never use his right or left foot, and concluded that Plaintiff could never perform any postural activities. (Tr. at 180-81.) Dr. Birk also stated that Plaintiff could never tolerate any environmental conditions nor could Plaintiff perform any activities except for caring for his own personal hygiene. (Tr. at 182-83.)

On June 4, 2009, Plaintiff was given a psychological evaluation by Thomas Pettus, LBSW. (Tr. at 201-13.) Plaintiff was diagnosed with major depressive disorder, recurrent, moderate and cocaine dependence in remission. (Tr. at 212.) His prognosis was "fair." (*Id.*) It was recommended that Plaintiff be provided medication-only services and participate in group therapy. (Tr. at 213.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who:

> has an exertional limitation of lifting 20 pounds occasionally, 10 pounds frequently. We look at jobs that would allow for sitting six hours, standing, walking two hours with a sit/stand option. No climbing ladders, ropes or scaffolds. Putting this person at unskilled level, could such a person perform claimant's past work?

(Tr. at 32.) The VE responded that such a person could not. (*Id.*) The VE further testified that such a person could perform 3,000 assembly, 2,000 sorting, and 2,000 inspection jobs at the light and

8

unskilled level that are available in the State of Michigan. (Tr. at 33.) The ALJ then asked the VE whether such a person could perform any work if the exertional limitations were changed to lifting zero pounds, no standing or walking, sitting 15 minutes, and no pushing, pulling, reaching, handling, or fingering. (Tr. at 33.) The VE responded that such a person could not perform any work. (*Id.*)

### F.   Analysis and Conclusions

#### 1.   Legal Standards

The ALJ determined that during the time he qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of light work. (Tr. at 11-12.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2.   Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner and instead asserts that the decision is "contradicted by the evidence." (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where

9

substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the ALJ fails to give "controlling weight to the objective medical evidence" and "goes on to ignore all the medical opinions of trained treating physicians without any rational basis." (Doc. 11 at 11-13.) In addition, Plaintiff contends that the ALJ "had no basis whatsoever for not finding Major Depressive Disorder as a severe impairment." (Doc. 11 at 13-14.) As a result, Plaintiff contends that the "RFC determination by the ALJ did not accurately portray Mr. Hurd's physical and mental impairments and nonexertional limitations." (Doc. 11 at 14-16.)

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, ___ F.3d ___, slip op. at 8, 2011 WL 2652192 (6th Cir. July 8, 2011).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. Where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Comm'r of Soc. Sec.,* ___ F.3d ___, 2011 WL 2745792, at *5 (6th Cir. July 15, 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain

11

specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

In the instant case, the ALJ weighed the *Wilson* factors and noted that Dr. Birk's 2009 assessment found Plaintiff "entirely limited in every assessed category" and "assessed Claimant's only remaining functional ability to be sitting for no more than 15 minutes in an 8-hour workday." (Tr. at 17.) The ALJ found that Dr. Birk's opinion was "inconsistent with the evidence as a whole, including Claimant's own testimony" and that Dr. Birk's 2009 opinion was "undermined by his own earlier findings of August 23, 2007, which found that Claimant retained the physical capacity to sit frequently, stand and/or walk sometimes and lift up to 10 pounds." (*Id.*) Finally, the ALJ found that the "objective medical evidence does not support finding that Claimant's condition has drastically worsened since the June 2007 assessment . . . ." (*Id.*) I suggest that the ALJ's findings satisfactorily complied with the requirement to state his reasons and evaluate the factors given in *Wilson, supra*.

In addition to the reasons stated by the ALJ in giving little weight to Dr. Birk's opinion, I suggest that the ALJ's findings are supported by substantial evidence of record. Although Plaintiff did suffer from a fractured right distal tibia in January 19, 2007 (Tr. at 128), surgery to repair the fracture was successful and x-rays showed that the fracture had healed. (Tr. at 119, 122, 135, 143-

12

44, 149, 151.) Even viewing the evidence most favorably to Plaintiff and Dr. Birk, it is difficult to conceive how continuing medical problems with the right tibia could result in the inability to sit or to use one's hands as Dr. Birk concluded. (Tr. at 179, 180.)

In addition, although Plaintiff contends that the ALJ should have found Plaintiff's major depressive disorder to be a severe impairment, the only evidence, medical or otherwise, was an evaluation where it was concluded that Plaintiff's prognosis was "fair" and that Plaintiff's treatment was minimal, i.e., medication-only services and participation in group therapy. (Tr. at 212-13.) I therefore suggest that the ALJ's findings are not undermined by reference to the assessment regarding Plaintiff's depression.

I further suggest that the modest treatment regimen given Plaintiff's physical and psychological impairments provide added support to the ALJ's findings. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007) (modest treatment regimen consisting only of pain medication is inconsistent with a finding of total disability).

In addition, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment (Tr. at 32, 172-76), and that the hypothetical was in harmony with the objective record medical evidence. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                      s/ **Charles E. Binder**
                                      CHARLES E. BINDER
Dated: September 14, 2011            United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  September 14, 2011                   By     s/Patricia T. Morris
                                                         Law Clerk to Magistrate Judge Binder